## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

PETER G. CALLAN,

   Plaintiff,

v.             Civ. No. 17-441 GBW

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

   Defendant.


## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND

  This matter comes before the Court on Plaintiff's Motion to Reverse and Remand

for Payment of Benefits, or in the Alternative, for Rehearing, regarding the Social

Security Agency ("SSA") decision to deny Plaintiff Supplemental Security Income

("SSI"). *Doc. 20.* For the reasons discussed below, the Court GRANTS Plaintiff's

Motion, and REMANDS this action to the Commissioner for further proceedings

consistent with this opinion.

I.  PROCEDURAL HISTORY

  Plaintiff filed an application for SSI on December 24, 2014 with a protective filing

date of November 18, 2014.[1]  AR at 174-78.  Plaintiff alleged a disability onset date of

---

[1] Plaintiff also applied for disability insurance benefits, but withdrew his application during the
administrative hearing.   AR at 24, 179-85.   Therefore, this opinion focuses solely on Plaintiff's SSI
application.

March 1, 2012 and that his disability stemmed from tumors removed from his feet, nerve damage on both feet, and high blood pressure.  AR at 54.  He later added anxiety, chronic pain, insomnia, headaches, neuropathy, inflammation of the feet, and back, knee, hip and neck pain to his alleged impairments.  AR at 65.  His application was denied on initial review on April 10, 2015 and again on reconsideration on December 17, 2015.  AR at 54-76, 100-04.  On January 28, 2016, Plaintiff requested a hearing on the determination by an Administrative Law Judge ("ALJ"), and the hearing took place on October 20, 2016.  AR at 20-53, 121-23.  On December 14, 2016, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  AR at 80-89.

Plaintiff appealed the denial of his application to the Appeals Council, which denied review on March 2, 2017, making the ALJ's decision the final decision of the Commissioner.  AR at 1-6.  Plaintiff filed suit in this Court on April 11, 2017, seeking review of the ALJ's decision.  *Doc. 1.*

II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id*. at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.    ALJ EVALUATION

### A.  Legal Standard

For purposes of SSI benefits, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 416.920.   If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. § 416.920(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity;" (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairments meet or equal one of the "Listings" of presumptively disabling impairments or (4) she is unable to perform her "past relevant work." *Id.* § 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 416.945 (a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62, 1982 WL 31386, at *3 (S.S.A. Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *See id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in

the national economy, considering the claimant's RFC, age, education, and work experience.  *See Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On December 14, 2016, the ALJ issued a decision denying Plaintiff's application for benefits.  AR at 80-89.  In denying Plaintiff's applications, the ALJ applied the five-step sequential analysis.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 18, 2014, the application date.  AR at 82.

At step two, the ALJ determined that Plaintiff had the following severe impairments: cardiomyopathy, hypertension, osteoarthritis of the hip and knee, peripheral neuropathy, status post Morton's neuroma excisions, and obesity.  *Id*.  At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of one of the listed impairments.  AR at 83.

At step four, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.156, 20 C.F.R. § 416.967, and SSR 83-10 with certain limitations, including that Plaintiff "[can] lift no more than 10 pounds occasionally . . . is able to sit for approximately 6 hours in an 8-hour workday, and is able to stand and walk for no more than 2 hours in an 8-hour workday; he is able to frequently handle and finger; and never kneel, crouch or crawl."  AR at 84.

At the next part of step four, the ALJ found that, based on his RFC, Plaintiff is

capable of performing his past relevant work as an administrative assistant (DICOT 169.167-010, 1991 WL 647424). AR at 88. Even though the ALJ made this determination, she nevertheless proceeded to step five and made the alternative finding that there are additional jobs that exist in significant numbers in the national economy that Plaintiff could perform, including positions as a Front Desk Receptionist (DICOT 237.367-010, 1991 WL 672192). AR at 89. As a result, the ALJ concluded that Plaintiff was not disabled. *Id*.

## IV.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ committed reversible error on the following grounds: (1) the ALJ's determination of Plaintiff's RFC is not based on substantial evidence; (2) the ALJ improperly treated and incorporated the opinions of Elizabeth Dinsmore, Ph.D, Suzanne Lovelace, LPCC, Francis Buda, M.D., and Geraldean Glover; (3) the ALJ failed to consider the side effects of Plaintiff's medication when performing her RFC analysis; (4) the ALJ neglected to consider Plaintiff's obesity in accordance with SSR 02-1p; (5) the ALJ performed an insufficient credibility analysis; (6) the ALJ failed to incorporate the effects of Plaintiff's cardiac impairment during her RFC analysis and (7) the ALJ's finding that Plaintiff can perform his past work is not supported by substantial evidence and contrary to the law. *Doc. 20* at 7-19.

Defendant responds that the ALJ's decision should be affirmed, because (1) the ALJ's decision to limit Plaintiff to sedentary work is based on substantial evidence; (2)

the ALJ gave proper and valid reasons for weighing the opinion evidence as she did; (3) the ALJ properly made an adverse credibility finding based on substantial evidence; (4) the ALJ sufficiently considered Plaintiff's obesity and its effects on his functioning; (5) the ALJ considered Plaintiff's cardiac functioning in her decision; and (6) the ALJ reasonably found that Plaintiff was capable of performing his past relevant work and other work. *Doc. 24* at 7-23.

Ultimately, the Court finds that the ALJ committed reversible error by failing to comply with Social Security Ruling (SSR) 02-1p due to an inadequate evaluation of Plaintiff's obesity. The Court does not reach the other issues.

V.    ANALYSIS

**The ALJ Committed Reversible Error by Failing to Perform the Required Consideration of Plaintiff's Obesity in Her RFC Assessment.**

Plaintiff contends that the ALJ committed reversible error in failing to evaluate the impact of Plaintiff's obesity in her RFC assessment. *Doc. 20* at 17. For the following reasons, the Court finds that the ALJ's failure to perform the required consideration of Plaintiff's obesity during step four of the sequential disability analysis constitutes error mandating remand.

In 2015, Plaintiff was 5'9," weighed 243 pounds, and had a Body Mass Index

("BMI") of 35.9. AR at 85, 510.[2] The National Institute of Health ("NIH"), in its Clinical Guidelines, classifies an individual as obese if they have a BMI of 30.0 and above. SSR 02-1P, 2002 WL 34686281, at *2 (S.S.A. Sept. 12, 2002). Plaintiff, with a BMI of 35.9, suffers from Level II obesity, which affects individuals with BMIs of 35.0 to 39.9. *Id.*[3]

Because of Plaintiff's obesity, the ALJ was required to engage in additional analysis in her opinion. Specifically, "Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (unpublished) (quoting SSR 02-1p, 2002 WL 34686281, at *1).[4] Plaintiff's medical providers expressed concern over the impact of Plaintiff's obesity throughout the record, noting that his obesity "undoubtedly is affecting several of his other problems," and that weight loss was "critical for all of his health problems[.]" AR at 510, 516, 532.

As to how the SSA must evaluate obesity in assessing a claimant's RFC at step

[2] The NIH provides an online BMI calculator. *See* National Institutes of Health, Department of Health and Human Services, Calculate Your Body Mass Index, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Nov. 13, 2017).
[3] The final and highest classification of obesity is Level III which includes individuals with a BMI greater than or equal to 40. SSR 02-1p, 2002 WL 34686281, at *2.
[4] The ALJ was also required to consider obesity at step three of the analysis in determining whether Plaintiff's impairments met or medically equaled the requirements of a listed impairment. SSR 02-1p, 2002 WL 34686281, at *5 ("We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments . . . . This is especially true of musculoskeletal, respiratory, and cardiovascular impairments [and] may also be true for . . . mental disorders.").

four, SSR 02-1p explains:

> Obesity can cause limitation of function. . . .  An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. . . .  The effects of obesity may not be obvious.  For example, some people with obesity also have sleep apnea.  This can lead to drowsiness and lack of mental clarity during the day.  Obesity may also affect an individual's social functioning.  An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment.  Individuals with obesity may have problems with the ability to sustain a function over time. . . .  In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. . . .  As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p at *5-*7.

The SSA requires adjudicators to consider obesity at steps two, three, and four of the sequential disability evaluation process.  *See id.* at *3 ("We will consider obesity in determining whether . . . [t]he individual has a medically determinable impairment[;] [t]he individual's impairment(s) is severe[;] [t]he individual's impairment(s) meets or equals the requirements of a listed impairment . . . [; or] [t]he individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy.").

While at step two, the ALJ found that Plaintiff suffered from a severe impairment of obesity, from that point forward, her opinion fails to consider Plaintiff's obesity according to the approach required by the agency.  *See* AR at 82-84.  *See also* SSR 02-1p

at *1 ("[A]djudicators [are required] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.").

Although SSR 02-1p does not unequivocally require any particular mechanism by which to analyze obesity at step four, it has made clear that the ALJ must demonstrate to the court, in some way, that he or she considered the claimant's obesity. *See* SSR 02-1p, 2002 WL 34686281, at *7 ("[W]e will explain how we reached our conclusions on whether obesity caused any physical or mental limitations"). And, as already discussed, the Ruling also provides a number of examples of ways in which a claimant's obesity may affect the RFC analysis, including its effect on physical and social functioning. *Id.* at *6 (discussing potential impact on all exertional functions as well as mental clarity, social functioning, and ability to sustain work activity). Particularly relevant to Plaintiff, who reported pain and discomfort in his feet, knees, hips, lower back and neck, as well as an inability to sit for long periods of time, SSR 02-1p expressly anticipates that obesity may affect a claimant's ability to sit or stand. *Id.* *See also* AR at 85, 86-87. Accordingly, the agency requires ALJs to make an assessment of such limitations, as well as an assessment of "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity with the work environment." SSR 02-1p, 2002 WL 34686281, at *6. The ALJ performed no such assessment. AR at 84-88.

The Ruling also expressly anticipates that obesity is often comorbid with sleep apnea, leading to "drowsiness and lack of mental clarity during the day[,]" and that obesity can result in fatigue that may affect ability to sustain work activity even where a claimant does not have sleep apnea. SSR 02-1p, 2002 WL 34686281, at *6. Again, this is particularly relevant to Plaintiff, who reported poor sleep. AR at 86-87. Yet in her RFC determination, the ALJ failed to incorporate any consideration of the potential effect of Plaintiff's obesity on his ability to sustain work activity, as required by the agency's regulations. AR at 84-88.

Additionally, the Tenth Circuit has explained that remand is appropriate if an ALJ fails to discuss the impact of obesity on a claimant's other impairments at step three. *See Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008) (unpublished). Such a failure to discuss the impact of Plaintiff's obesity constitutes reversible error because, according to the agency's own regulations, the SSA "'will not make assumptions about the severity or functional effects of obesity combined with other impairments[,]'" and ALJs are therefore required to evaluate whether obesity increases the severity or functional limitations of a claimant's other impairments "'based on the information in the case record.'" *Id.* (quoting SSR 02-1p, 2002 WL 34686281, at *6).

The Commissioner counters that the limitation to sedentary work in Plaintiff's RFC properly accounts for any limitations resulting from obesity, causing the ALJ's failure to engage in the required analysis to constitute mere harmless error. *Doc. 24* at

18.  This argument is unavailing.  *See DeWitt*, 381 F. App'x at 785 (rejecting the SSA's argument that "the ALJ adequately considered the functional impacts of [claimant's] obesity" by limiting the claimant to sedentary work with certain restrictions, because "there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions.").  The Commissioner also argues that, because the ALJ discussed and weighed the opinions of various treatment providers who considered obesity in coming to their conclusions regarding Plaintiff's limitations, she sufficiently considered Plaintiff's obesity and accounted for it in her RFC assessment.  *Doc. 24* at 17-18.  Again, the *DeWitt* opinion forecloses this argument.  There, the Tenth Circuit expressly rejected the contention that "an ALJ's failure to explicitly consider the functional effects of obesity is harmless error if the ALJ adopts the limitations suggested by doctors who were aware of the claimant's obesity."  381 F. App'x at 786.  The court found that this "harmless error" rule does not apply where, as here, "the claimant's obesity was urged, and acknowledged by the ALJ, as a severe impairment."  *Id.* (internal quotations and alteration omitted).  Here, the error rests with the simple fact that the ALJ made no mention whatsoever of Plaintiff's obesity during her step three or step four analysis, despite having found it to be a severe impairment at step two.

The Court cannot properly speculate whether or not the ALJ considered Plaintiff's obesity in the absence of any guidance or commentary on the matter in her opinion.  *See Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (unpublished) (remand

warranted where ALJ failed to "assess the effects of claimant's obesity in conjunction with her back problem and explain how he reached his conclusions on whether obesity caused any physical or mental limitations." (internal quotations and alterations omitted)). *See also DeWitt*, 381 F. App'x at 785. As in *DeWitt*, the ALJ's RFC assessment here at best "was based on 'assumptions about the severity or functional effects of [Plaintiff's] obesity combined with [her] other impairments'—a process forbidden by SSR 02-1p." *Id.* (quoting 2002 WL 34686281, at *6).

Thus, a determination of whether or not the ALJ's RFC determination adequately accommodates Plaintiff's impairment of obesity, either singly or in combination with her impairments, can be neither assumed nor rendered post-hoc by the Court. The ALJ was required to consider and explain how Plaintiff's particular impairment of obesity impacted his RFC, specifically. She failed to do so.

## VI.   Conclusion

Because the ALJ committed reversible error by failing to perform the required consideration of obesity in her step four RFC assessment, the Court GRANTS Plaintiff's Motion to Remand to Agency for Rehearing (*doc. 20*).

Therefore, the Court orders that this case be REMANDED to the Commissioner for further proceedings consistent with the opinion.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**